CHARLES F. HOLLY, Respondent, *v.* THE METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

A policy of insurance issued by defendant upon the life of plaintiff contained a clause of forfeiture in case of non-payment of premiums when due by the terms of the policy, but with a proviso that if, after three

annual payments were made, the assured should fail in any payment thereafter, upon a surrender of the policy within thirty days after such unpaid premium became due, defendant would, in exchange, issue a paid-up policy for the amount of premiums paid. Plaintiff paid the premiums for over three years and then made default. Defendant, however, accepted plaintiff's note for the unpaid premium which contained this clause: " All claims to future insurance and all benefits whatever which full payment in cash of said premium would have secured, shall become immediately void and be forfeited * ' * if this note is not paid at maturity." Defendant gave a receipt for the premium, which stated that the policy was by the payment continued in force, " with its terms and conditions," until the next premium became due; the receipt, however, not to be binding upon the company " until the premium is paid." This note was renewed and defendant failed to pay the second note at maturity; he afterwards offered to pay the same but defendant refused, claiming the policy was forfeited. In an action to compel defendant to issue a paid-up policy for the premiums paid, *held,* that the receipt must be read in connection with the note, and upon failure to pay defendant was entitled to immediately forfeit the policy and plaintiff lost all right to any further insurance.

Punctuality in the payment of premiums in the case of a life insurance policy is of the very essence of the contract, and if a payment is not made when due, the company has the right to forfeit, it such is the contract.

The rule that a strict construction is to be given to a provision of forfeiture in a policy of insurance, and that it may not be extended for the purpose of working a forfeiture beyond the strict and literal meaning of the words used, applies only where the meaning is doubtful and the words capable of two constructions. Where the language is plain and unequivocal and the meaning not in doubt, in the absence of fraud or mistake, the contract must be enforced as it reads.

(Argued March 23, 1887; decided April 19, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 11, 1883, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*William H. Arnoux* for appellant. Payment was a condition precedent to the continuance of the policy, and no act of

God or mere accident, however controlling, could continue the policy in force after the pay day without payment. (*Howell* v. *Knick. Life Ins. Co.*, 44 N. Y. 276; *Wheeler* v. *Conn. Mut. Ins. Co.*, 82 id. 543.)     Courts of equity will not generally relieve against forfeiture.     Their jurisdiction to do so is a dangerous one, not to be extended, and should be sparingly exercised.     (*Blacksmith* v. *Fellows*, 7 N. Y. 401; *Oakley* v. *Morton*, 11 id. 25 ; *Harmony* v. *Bingham*, 12 id. 99; *Wibert* v. *N. Y. & E. R. R. Co.*, 12 id. 245; *Wolfe* v. *Howes*, 20 id. 197; *Cunningham* v. *Jones*, id. 486 ; *Ruse* v. *Mut. Benefit Life Ins. Co.*, 23 id. 516 ; *Catlin* v. *Tobias*, 26 id. 217 ; *Tompkins* v. *Dudley*, 25 id 272; *Nelson* v. *Odiorne*, 45 id. 489; *Dexter* v. *Norton*, 47 id. 62 ; *Booth* v. *Spuyten Duyvil R. M. Co.*, 60 id. 487 ; *Sand* v. *N. Y. Life Ins. Co.*, 50 id. 626; *Roehner* v. *Knick. Life Ins. Co.*, 63 id. 160.)

*James M. Fisk* for respondent.     Taking the notes of the plaintiff operated as an extension of the time of payment of the premium due February 16 until August 16, 1877. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521; *Bk. of Hamilton* v. *Mudgett*, 34 Hun, 100; 23 Week. Dig. 97; *Putnam* v. *Lewis*, 8 Johns. 389; *Smith* v. *Applegate*, 1 Daly, 91; *Parrott* v. *Colby*, 71 N. Y. 597.)     A forfeiture for non-payment of premium is inserted in the contract for the benefit of the insurer.     It may be waived by the company.     (*Parrott* v. *Sawyer*, 87 N. Y. 622.)     A forfeiture is not favored either in law or in equity, and a provision for it in a contract will be strictly construed ; a waiver will be found on slight evidence, when the equity of the claim is under the contract in favor of the plaintiff.     (*Burleigh* v. *Gebhard Fire Ins. Co.*, 90 N. Y. 220.)     When courts are compelled to choose between two constructions, the vigorous and hard producing a forfeiture, and the other natural and reasonable and supporting the obligation, the latter construction will be preferred.     (*Baley* v. *Homestead Fire Ins. Co.*, 80 N. Y. 21; *Burleigh* v. *Gebhard Fire Ins. Co.*, 90 id. 220; *Griffey* v. *N. Y. C. Ins. Co.*, 100 id. 421, 424.)

PECKHAM, J.    The defendant insured the life of the plain
tiff, August 16, 1870, in the sum of $5,000, on payment ot
a premium of $247 and a premium of the same amount there-
after payable on the sixteenth of August in each year.    The
policy was issued for the sole benefit of Charles F. Holly, Jr.,
and contained a clause of forfeiture if the premium were not
paid at the time mentioned.    It also contained a promise that
if, after three annual payments of premiums were made, the
assured should fail to make payment of any further premium
when due, then upon a surrender of the policy within thirty
days after such unpaid premium should be due, the company
would, in exchange, issue a paid-up policy for the amount of
even dollars of premium received by it on the policy.    The
plaintiff had thirty days after a premium became due in
which to pay it.    By subsequent agreement, the payment of
the premium was changed from annual to semi-annual
periods, and as thus changed the premiums had been paid to
February 16, 1877.

The plaintiff did not pay the premium which became due
on the date last named, and had not paid it on the fourteenth
of March following.    On that day he called at the office of
the company in New York, and being, as he says, short of
money, he asked for an extension of time, which resulted
finally in his giving a note for the payment of the premium
which had fallen due on the sixteenth of the previous
February, and the note was payable in three months from its
date (March fourteenth), and contained this condition : " This
note is given in part payment of the annual premium on
policy, numbered as per margin, with the understanding that
all claims to further insurance and all benefits whatever, which
full payment in cash ot said premium would have secured,
shall become immediately void and be forfeited to said com-
pany if this note is not paid at maturity."

Contemporaneous with this note, and as part of one and the
same transaction, the defendant gave to the plaintiff the
following receipt:

" METROPOLITAN LIFE INSURANCE COMPANY,
" 319 BROADWAY, NEW YORK,
" *March* 14, 1877.

" Note 3 mo., due June 14, 1877.

" CHAS. F. HOLLY :

" Received from the owner of policy No. 9, 609, $128$\frac{45}{100}$, which continues said policy in force until the 16th day of August, 1877, at noon, in accordance with its terms and conditions.

" Not binding upon the company until the premium is paid and this receipt signed by

" JNO. R. HEGEMAN,
" (Prem. Receipt),
" *Vice-President.*"

When this note became due, the plaintiff, not desiring to pay it, asked for its renewal, and the result was that the plaintiff signed another note containing a condition precisely similar to that set forth in the first one, and payable August 14, 1877, and the defendant gave up the first note to the plaintiff. When the second note became due the plaintiff failed to pay it, and on the twenty-fifth or twenty-sixth of August thereafter, called at the office of the company and offered to pay the note, which payment was refused and the claim made that the policy was forfeited by the non-payment of the note when due. The plaintiff, subsequently commenced this action to compel defendant to comply with its agreement and give a paid-up policy for the amount of premiums paid by him (over $1,700), up to the time when he failed to pay the premium due August 16, 1877.

The plaintiff has succeeded thus far. In the argument of the case here for the plaintiff much stress was laid upon the rules governing the court in construing contracts between insurance companies and policyholders, especially when any forfeiture is to be insisted upon by the former. A strict construction, it is said, must be insisted upon, and the contract resulting in a forfeiture cannot be extended beyond the strict

and literal meaning of the words used. This is undoubtedly true. In cases where the meaning is not entirely plain, and where it is capable of two constructions, one involving a forfeiture and the other being fair and reasonable and supporting the obligation of the policy against the insurer, that construction is preferred by the courts which does not involve the forfeiture, not only because it is not so harsh, but also because, if the language is doubtful, it is that employed by the insurer and should be taken most strongly against him. As is said by FINCH, J., in delivering the opinion of this court: "If a construction so literal and severe is intended by the insurer, he should at least say so by plain and appropriate language and not ask the court to supply it by intendment. (See *Burleigh* v. *Gebhard Fire Ins. Co.*, 90 N. Y. 220.) This was said in relation to the construction to be given the words, "detached at least one hundred feet," in a policy of insurance upon a lot of goods in a frame store-house thus situated.

The court held that a small office, standing seventy-five feet away, which the trial court found was not an exposure and did not affect the risk, did not constitute a breach of the warranty. But all the cases which use language of this nature, as to the construction to be given words in a policy, are cases where the words used leave the meaning in doubt. Where there is no doubt as to the meaning of the language used, such meaning must prevail with courts, for the simple reason that the parties have so contracted; and in the absence of fraud or mistake both must live up to their contracts or take the consequences. We entertain no doubt as to the meaning of this contract. On the 16th of February, 1877, a semi-annual payment of a premium became due from the plaintiff, which he was obliged to pay in order to keep his policy alive, or he could have made default in payment and demanded his paid-up policy for the proper amount. He had thirty days from the sixteenth of February in which to pay the premium due that day, or to make his demand for a paid-up policy. He waited until the fourteenth of March

before doing anything, and he then went to the office of the defendant, in New York, to ask a favor, *i. e.,* the postponement of the cash payment for a short time. This favor the company granted, but only upon one condition, which was put in writing and assented to and signed by the plaintiff. He thereby consented and agreed that if he failed to pay this note at maturity he should thereby, among other things, immediately forfeit all claims to further insurance.

The written receipt is to be read in connection with this note, and the whole transaction then appears to be and it was simply this : The company acknowledged the receipt of the February premium and continued the policy in force to August sixteenth, provided the note, which was given instead of cash in payment of the premium, was paid at maturity. If not, then the company had the right to immediately forfeit the policy and all claims to further insurance, which right of forfeiture includes the very claim in suit. When the first note became due it was renewed by the execution of another upon the same terms and conditions, due August fourteenth, and the first note was then surrendered.

By failing to pay this last note when due, the forfeiture provided for therein immediately attached and the plaintiff thereby lost the right which he would otherwise have had to further insurance, according to the tenor of his policy, but which he had agreed to give up on condition of obtaining an extension of the time in which to pay his premium and by failing to pay it at the end of that time.

It is argued that taking the first note had the effect of designating a new period, from which the default in the payment of the premium should afterwards be measured and that as the premium only became due under the final arrangement on the 16th of August, 1877, the plaintiff by the policy had the right to a paid-up policy within thirty days after that time. This reasoning wholly ignores the condition contained in the note and renders the language thereof meaningless. The note not only extended the time of payment of the premiums, but it distinctly stated, not that failure to pay at

maturity should be treated as a default, which perhaps might give the thirty days thereafter in which to surrender the policy and demand a paid-up one, but the language used was entirely explicit and free from doubt, making an unambiguous agreement to absolutely and immediately forfeit all right to further insurance if the note was not paid at maturity.

To that extent it was an alteration of the terms of the policy giving thirty days after a default in which to surrender and make a demand, and instead thereof it plainly provided for a total and immediate forfeiture if, at maturity, the note were not paid. If language as plain and unambiguous as this is not only to be twisted out of its natural meaning, but is to be wholly ignored by courts of justice, it will be useless in the future for companies to make any effort to bind policy-holders to perform their contracts. The use of language is to express ideas, and writing is resorted to in order to furnish conclusive proof of what language was used. Being certain of the language used and the case being free from fraud or mistake, if such language is plain and susceptible of but one meaning, that meaning, even in cases of contracts regarding life insurance, must control though a forfeiture should be the result.

Punctuality in the payment of premiums in the case of a life insurance policy is of the very essence of the contract, and when payment is not made at the time the company has the right to forfeit if such is the contract. (*In re Att'y-Gen.* v. *North Am. Life Ins. Co.*, 82 N. Y. 172–189; *People* v. *Knickerbocker Life Ins. Co.*, 103 N. Y. 480; *Ins. Co.* v. *Statham*, 93 U. S. 24.) Here the plaintiff failed to pay his premium on the sixteenth of February, and was accorded the favor of a postponement until the maturity of the first note in June, and then again until the maturity of the second in August, and then on his failure the company legally exercised its right of forfeiture. No stress is laid, and upon the evidence none can be laid, upon any alleged promise to renew or extend the payment of the second note. By plaintiff's own evidence there was no such promise.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.